IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS


UNITED STATES OF AMERICA,

                    Plaintiff,

          Vs.                                              No.  05-40018-01-SAC

HIPOLITO VARGAS-ISLAS,

                    Defendant.


MEMORANDUM AND ORDER

          The case comes on for sentencing and for ruling on the defendant's

single unresolved objection to the Presentence Report ("PSR").  The defendant has

filed a sentencing memorandum (Dk. 35) in support of his objection preserved in

the addendum to the PSR.  Pursuant to an agreement, the defendant pleaded guilty

to a single count of transporting and moving an alien in violation of law as charged

in count one of the sixteen-count indictment.  The government has agreed to

recommend a sentence at the low end of the guideline range, a full reduction for

acceptance of responsibility, and an additional two-level reduction for a "fast-track

resolution."

          The PSR recommends a base offense level of 12 pursuant to

U.S.S.G. § 2L1.1(a)(2); a three-level reduction, U.S.S.G. § 2L1.1(b)(1), because the offense was committed other than for profit; a three-level increase, U.S.S.G. § 2L1.1(b)(2)(A), for transporting sixteen unlawful aliens; and a two-level increase or a minimum offense level of 18, U.S.S.G. § 2L1.1(b)(5), because the offense involved "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person."  Subtracting three levels for acceptance of responsibility from the minimum offense level of 18 established by § 2L1.1(b)(5), the PSR calculates a guideline sentencing range of 18 to 24 months based on a total offense level of 15 and a criminal history category of one.

The defendant's only objection is to the specific offense characteristic of intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, U.S.S.G. § 2L1.1(b)(5).  The PSR bases this enhancement on the uncontested facts that the defendant and his co-defendant were transporting sixteen unlawful aliens in a 1995 Ford F250 extended cab pickup truck.  Some of the sixteen were traveling in the cab, and the rest were riding in the bed of the pickup truck that was covered by a camper shell.   The defendant objects to the conclusion that the pickup was rated for only six passengers and to the inference that carrying more passengers than the rated capacity necessarily constitutes reckless endangerment of the passengers.  Beyond the fact that no one

2

was actually injured, the defendant argues that the passengers voluntarily chose to ride in the pickup and had contributed money towards the purchase of the pickup which they agreed would be titled in the defendant's name.  The defendant contends that the passengers, "[a]s owners of the vehicle, . . . are even more responsible for the conditions under which they chose to ride."  (Dk. 35).  The government responds that it will not argue in favor of this enhancement and offers that "[r]iding in the back of a truck is conduct experienced by every farm kid in Kansas."

Section 2L1.1(b)(5) instructs a court to increase by two levels or such additional levels as to bring the offense level to a minimum of 18 "[i]f the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person."  Application note six to this guideline states in part:

> Reckless conduct to which the adjustment from subsection (b)(5) applies includes a wide variety of conduct  (e.g. transporting persons in the trunk or engine compartment of a motor vehicle, carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or harboring persons in a crowded, dangerous, or inhumane condition).

As the commentary indicates, this guideline provision is intended to enhance a defendant's offense level when the persons being transported ride in areas of a vehicle not designed for safe passenger transportation or when the number of

3

persons substantially exceeds the rated seating capacity of the vehicle. On the undisputed facts appearing in the PSR, both circumstances exist here.

This enhancement "has most often been applied when the vehicle driven by the smuggler was carrying more passengers than the rated capacity of the vehicle . . . ." *United States v. Maldonado-Ramires*, 384 F.3d 1228, 1231 (10th Cir. 2004)[1] (citing in part *United States v. Cuyler,* 298 F.3d 387, 391 (5th Cir. 2002) ("holding that § 2L1.1(b)(5) enhancement was appropriate where illegal aliens were transported lying down in the bed of a pickup truck, despite fact that it was legal in Texas for adults to travel unrestrained in such a manner")). In *Cuyler*, the Fifth Circuit affirmed a § 2L1.1(b)(5) enhancement for the "reckless conduct" of transporting four aliens in the bed of a pickup truck. 298 F.3d at 388. The Fifth Circuit reasoned:

> The issue presented in this case is whether Cuyler's transportation of four illegal aliens in the bed of his pickup truck on the highway "involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person" under § 2L1.1(b)(5).
> . . . .
> . . . Application Note 6 makes clear that "reckless conduct" under the

---

[1] The Tenth Circuit in *Maldonado-Ramires* affirmed a § 2L1.1(b)(5) enhancement for the defendant who transported "aliens in a minivan altered to remove the rear seats and seatbelts" and required them to "remain prone on the floor of the van" which prevented them from "react[ing] to any dangerous driving conditions that might arise during the trip." 384 F.3d at 1231.

guideline applies to a wide variety of conduct.  The illegal aliens were unrestrained in the bed of the pickup, and easily could have been thrown from the truck and almost certainly would been injured in the event of an accident.  Although as Cuyler points out, it is not illegal under Texas law for adults to ride in the bed of a pickup truck, it is illegal for children to ride in the bed of a pickup.  Obviously, allowing passengers to ride in the bed of a pickup truck creates danger in many situations.

We have not found any published opinions that address whether transporting aliens in the bed of a pickup truck on the highway falls under § 2L1.1(b)(5).  However, three unpublished Ninth Circuit opinions have all found that smuggling aliens in the bed of a pickup truck warrants an offense level increase under § 2L1.1(b)(5).  These unpublished opinions of another circuit of course have no precedential value.  The logic, however, that smuggling illegal aliens in the bed of a pickup on the highway is dangerous nevertheless applies.

Numerous other cases have found that § 2L1.1(b)(5) applies in cases where the defendant smuggled aliens in an overcrowded van, often without seats or seat belts.  (citations omitted).  The risks of unrestrained passengers in a van with no seats are akin to the risks of an unrestrained passenger in the bed of a pickup truck with no seats.  In fact, the risk to the passengers in the pickup bed is greater, as they are not protected by the passenger compartment of the vehicle.

. . . .

. . . Aliens who are unrestrained easily can be thrown from the bed of the pickup in the event of an accident or other driving maneuver of the sort that is unavoidable in the highway driving.  The offense in this appeal meets the requirements of § 2L1.1(b)(5).

298 F.3d at 390-91; *see United States v. Angeles-Mendoza*, 407 F.3d 742, 750-51

(5th Cir. 2005) ("adjustment is appropriate where the smuggled alienes are

transported in the bed of a pickup truck").  In an unpublished decision, the Ninth

Circuit has observed:

Transporting ten people on the highway in the bed of a pickup truck

5

protected by only a camper shell is more dangerous than carrying more people in a van than it was designed to hold, which this court has already held permits the § 2L1.1(b)(5) increase. *See* [*United States v.*] *Hernandez-Guardado*, 228 F.3d [1017,] at 1027-28 [(9th Cir. 20000]. Not only are there no seatbelts in the bed of a pickup truck, there are not even any seats. And a camper shell provides less protection than does the passenger compartment of a vehicle.

*United States v. Luna-Moreno*, 10 Fed. Appx. 638, 639, 2001 WL 615284, at *1 (9th Cir.), *cert. denied*, 534 U.S. 969 (2001). Though this unpublished decision lacks precedential force, its reasoning is both logical and practical.

The court accepts as a sound factual inference well-supported by case law that driving a pickup truck at interstate highway speeds for hundreds of miles with passengers riding in the bed without seats and seat belts and only a camper shell covering them intentionally and recklessly creates a substantial risk of death and serious bodily injury to those passengers riding in the bed in the event of an accident or other emergency driving maneuver. Nor can there be any serious objection to the finding that the rated seating capacity for this pickup truck with an extended cab is substantially less than eighteen persons. The terms of § 2L1.1(b)(5) do not require the defendant to have compelled the other persons to expose themselves to this substantial risk of death or serious bodily injury. It is enough that the defendant criminally committed the offense of transporting unlawful aliens and the act or manner of transporting "involved" this substantial risk. By his

6

plea, the defendant admitted he committed this offense and, thus, is responsible for transporting the aliens in this reckless manner.  The defendant further stipulated to the factual basis appearing in the plea agreement which included:  "The sixteen other aliens told the investigators that Mr. Vargas-Islas and Mr. Gonzales-Ortiz were working for the smuggling operation, and had driven the pickup to the stash-house in Phoenix, Arizona, and had driven all the aliens to Kansas enroute to various destinations, including North Carolina."  (Dk. 30).  That the unlawful aliens may have assumed this risk in contributing towards the purchase of a pickup truck and then in choosing to ride in the bed of the pickup truck does not relieve the defendant of his responsibility for the reckless conduct of voluntarily transporting the aliens under these circumstances.

IT IS THEREFORE ORDERED that the defendant's objection to the PSR is overruled.

Dated this 22nd day of June, 2005, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

7